Eddie E. FOWLER, Plaintiff-Appellant,

v.

The BIRMINGHAM NEWS COMPANY, Defendant-Appellee.

No. 78–3196.

United States Court of Appeals, Fifth Circuit.

Dec. 27, 1979.

**1056**

---

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Johnston, Barton, Proctor, Swedlaw & Naff, John D. Quenelle, James C. Barton, Hubert A. Grissom, Jr., Birmingham, Ala., for defendant-appellee.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Eddie E. Fowler was hired, along with eleven others, as an apprentice pressman by The Birmingham News on April 14, 1969. He charges The News with numerous violations of Title VII.[1] He claims that his seniority was discriminatorily assigned on the day he was hired because he was placed on the bottom of the departmental priority list. Fowler also claims he was discriminated against when, approximately two weeks after he was hired, The News hired white journeymen pressmen from outside the ranks of the apprentices who were less qualified for the pressman position than he was. He further contends that he received no journeyman shift assignments during his apprenticeship and that as a result he was not provided the same quality of training provided white employees. Finally, Fowler claims he was passed over for several supervisory positions for which he was qualified. As a result of these alleged discriminatory acts, Fowler filed a charge of racial discrimination in employment with the Equal Employment Opportunity Commission (EEOC) on April 5, 1971, and amended that charge on October 19, 1972.

The district court granted summary judgment for The News and dismissed the action. In doing so, the district court found that Fowler failed to file a charge of discrimination with the EEOC within the applicable ninety-day time period following the alleged acts of discrimination and therefore any claims arising from Fowler's initial hiring were barred by time.[2] The Court also found that Fowler's lawsuit was barred by the judgment in a prior Title VII case, *Cook v. The Birmingham News*, CA–73–M–514 (N.D.Ala.1975). *See Kemp v. The Birmingham News Co.*, 608 F.2d 1049 (5th Cir. 1979), for a factual recitation forming the basis for the consent decree entered in *Cook*. We affirm the ruling of the district court.

A jurisdictional prerequisite to a Title VII action is the timely filing of a complaint with the EEOC. Fowler did not

---

1. Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (1976).

2. Section 706(d), 78 Stat. 260, 42 U.S.C. § 2000e–5(d), then provided in part: "A charge under subsection (a) shall be filed within ninety days after the alleged unlawful employment practice occurred  . . ."

file a charge of discrimination with the EEOC until April 5, 1971, almost two years after he was hired and placed on the defendant's seniority list.

On appeal, Fowler does not contest the dismissal of the claims concerning his placement on the seniority list and the hiring of outside journeymen ahead of Fowler, acts that occurred more than ninety days prior to his charge of discrimination filed with the EEOC in 1971. Accordingly, we give no consideration to these claims. He contends, however, that the instant case involves claims of discrimination that did occur within the ninety-day period and continued throughout the period before the complaint was filed in the district court. During this period, he argues, his illegal placement on the seniority list had a continuing effect on his job assignments and on the quality of his training. He further contends that the initial discrimination resulted in his being denied consideration for positions for which he was qualified, positions that were awarded to white employees and applicants who were less or no better qualified than he was. We conclude that these claims are also barred, both by time and by the *res judicata* effect of the consent degree in *Cook v. The Birmingham News, supra.*

Under *Evans v. United Air Lines*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the claims that stem from the illegal placement on a seniority list may be barred by time. *Evans* held that plaintiff could not obtain relief with respect to time-barred discriminatory acts on the ground that the "present effects of past discrimination" continued during the limitations period. *Id.* at 558. The Court emphasized that mere continuity of impact from prior discrimination does not, without more, justify relief under Title VII; rather "the critical question is whether any present *violation* exists." *Id.* The seniority system involved in that case was facially neutral in its operation; it presented no barrier based on sex

at the time of the suit. Therefore, the Court held that United was entitled to treat its past act of discrimination as lawful after Evans failed to file a charge of discrimination within the proper time period.

■ Fowler argues that *Evans* does not limit his claim because the promotional system in question represents a continuing violation of Title VII, the effect of which was to deny him the opportunity to work journeyman shifts while still an apprentice and thus he was denied equal pay and training opportunity. Assuming this argument has factual support, it is, when analyzed, nothing more than a contention that his placement on the priority list was discriminatorily assigned on the day he was hired and that the present effect of maintaining that seniority order perpetuates the effects of this past discrimination. He fails to claim, however, that The News engages in current discriminatory employment practices based on race. And he makes no showing that the seniority system used by The News is designed and maintained with an intentionally discriminatory purpose, a prerequisite for alleging a present violation of Title VII. *See United States v. East Texas Motor Freight Systems*, 564 F.2d 179 (5th Cir. 1977); *Southbridge Plastics Division v. Local 759, United Rubberworkers*, 565 F.2d 913 (5th Cir. 1978). *Cf. James v. Stockham Valves & Fittings Co.*, 559 F.2d 310 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). While Fowler may be correct that the allegedly illegal placement on the seniority list will have a continuing adverse impact on him, as did the seniority system in *Evans, Evans* made clear that the operation of a seniority system is not unlawful under Title VII even though it perpetuates discrimination that has not been the subject of a timely charge by the discriminatee.[3] *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 348 n.30, 97 S.Ct. 1843, 52

---

**3.** Fowler relies on *Patterson v. American Tobacco Co.*, 586 F.2d 300, 304 (4th Cir. 1978) to demonstrate that *Evans* did not reach a continuing violation such as a discriminatory promotional system where the discrimination continues from day to day and a specific violation occurs whenever a promotion is made. That case involved a promotion system that was found to be in violation of Title VII, however, and is therefore not here applicable.

L.Ed.2d 396 (1977). Accordingly, the lower court's application of the ninety-day rule to the alleged actions in 1969 and the other claims of discrimination that stem from that action was proper. *See Dobbs v. City of Atlanta, Ga.*, 606 F.2d 557 (5th Cir. 1979).

■ There is another reason why the district court must be affirmed in this case. These claims heretofore discussed and the claim that Fowler was passed over for positions for which he was qualified are also barred by the *res judicata* effect of the consent degree in *Cook v. The Birmingham News*. The problems of which Fowler complains, discrimination in promotion, in job assignments, and in the quality of training, appear on their face to fall within the classwide injunctive relief granted to "all individuals who . . . may claim to have been discriminated against because of their race in regard to hire, tenure, or promotion or transfers . . . ." *Cook* consent decree. This covered a wide range of discriminatory practices such as assigning blacks to less desirable jobs than those given whites, providing unequal training opportunities, and discriminating in supervisory assignments. *See Kemp v. The Birmingham News, supra.* Thus, Fowler was eligible for the affirmative relief accorded members of the class involved in the consent decree entered in *Cook*. That decree was a full and final adjudication of all claims that were or might have been brought on behalf of Fowler.

■ Fowler argues, however, that relief accorded to the class was strictly limited to membership of the historically black Birmingham Printing Specialties Union, Local 569, of which he was not and is not a member. This is true of the subclass created for back-pay purposes[4] but Fowler was still eligible for the affirmative relief granted. Fowler also argues that, because he was not considered by the class representatives or by himself to be a member of the class, he is not bound by the *res judicata* effect of the consent decree. What the class representatives may claim three years after the entry of the decree is not relevant to the definition of the class the court fashioned, however.

Finally, to meet the *res judicata* defense, Fowler contends that, even if he is to be considered a member of the class in *Cook*, the representation of his interests in that action was so inadequate that *res judicata* should not be a bar to the present action. He claims that some of the affirmative relief accorded members of the class conflicted with his interest and therefore violated due process. Furthermore, he alleges that he did not receive adequate notice of the decree.

■ A judgment in a class action will generally bind the members of the class. However, the law is clear that a class member cannot be bound to a judgment in which he was not adequately represented by the class representative. *Hansberry v. Lee*, 311 U.S. 32, 40, 44, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973). *See Kemp v. The Birmingham News, supra.* This exception is grounded in due process. *Id.* In determining the adequacy of representation, it should be considered whether any antagonism exists between the interests of the plaintiffs and those of the remainder of the class. *See Hansberry v. Lee, supra; Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). Fowler claims that because the retroactive priority awarded the class representative Cook in the prior litigation placed Cook higher on the priority list than Fowler, therefore, Fowler's interests conflicted with those of the named plaintiff. Under the circumstances of this case, however, the antagonistic interests were not significant. The claims of the class representative were "typical" of Fowler's claims concerning the affirmative relief

---

4. The *Cook* consent decree reads:

For the purposes of compensatory relief in the form of back-pay awards, the class shall consist of those black employees . . . who (1) have seniority dates of May 19, 1959 or before; (2) were on the company payroll as of January 1, 1973; and (3) were, on May 7, 1970 members of the plaintiff Birmingham Printing Specialties Union, Local 569.

granted and Fowler was not eligible for the back pay or retroactive priority relief granted to Cook. Any antagonistic interests involved were ameliorated by the provision for notice in the decree, with an opportunity to opt out of the class. *Cf. East Texas Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Bailey v. Ryan Stevedoring Co.,* 528 F.2d 551, 553 (5th Cir. 1976).

■ Inadequate notice by posting the proposed decree on the company's bulletin board forms the final basis for Fowler's lawsuit. In a Rule 23(b)(2) class action, mechanics of the notice process are left to the discretion of the district court subject only to the broad "reasonableness" standards imposed by due process. *See Mandujano v. Basic Vegetable Products, Inc.,* 541 F.2d 832 (9th Cir. 1976); F.R.Civ.P. 23(e) ("proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs"). Fowler cites and relies on cases to support his argument that due process requires mailed notice. *See Greenfield v. Villager Industries, Inc.,* 483 F.2d 824 (3d Cir. 1973). The district court found, however, that the class received notice reasonably expected to convey a warning of the impending action. Because notice of the decree was posted on the bulletin board in the pressroom where Fowler worked and because the class involved numbered less than 100 people, this finding is not clearly erroneous. *See Johnson v. General Motors Corp.,* 598 F.2d 432 (5th Cir. 1979).

The judgment of the district court is AFFIRMED.