634 F.2d 989
 26 Fair Empl.Prac.Cas. 828,
25 Empl. Prac. Dec. P 31,521
Eugene PENSON, Plaintiff-Appellant,
v.
TERMINAL TRANSPORT COMPANY, INC. and International
Brotherhood of Teamsters, Local 728, Defendants,
Terminal Transport Company, Inc., Defendant-Appellee.
 No. 79-2483.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 Jan. 23, 1981.
 Philip S. Davi, Atlanta, Ga., for plaintiff-appellant.
 Smith, Cohen, Ringel, Kohler & Martin, Kenneth L. Millwood, Atlanta, Ga., Fredrick C. McLam, Decatur, Ga., for defendant-appellee.
 Robert W. Beynart, Atlanta, Ga., for Truck Drivers & Helpers Loc. Union 728.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before GEWIN, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Plaintiff sued his former employer and his union alleging he was discharged because of his race. The district court granted the employer's motion for summary judgment on the ground the suit was barred by a prior consent decree entered in a class action against the employer. We reverse, holding the present action is not barred because the notice of the consent decree received by plaintiff did not inform him of his right to "opt out" of the class and pursue his individual suit. In so holding, we seek to clarify the law in this Circuit concerning the opt-out rights, and the corresponding notice requirements, of absent members of a class certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure.
 
 
 2
 The district court also denied Penson's motion for "specific relief" under the terms of the consent decree on the ground that Penson had not filed his claim within the time period prescribed by notice of the decree. Holding the court did not err in denying the out-of-time motion, we affirm.
 
 FACTS
 
 3
 In 1974, defendant Terminal Transport Company discharged plaintiff Eugene Penson, a black employee of its Atlanta, Georgia, terminal, ostensibly because of his poor attendance record. After failing to obtain relief through the grievance procedure established by the collective bargaining agreement between Terminal and the codefendant union, Local 728 of the International Brotherhood of Teamsters, Penson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC issued Penson a right-to-sue letter in May, 1978. In July 1978, he instituted this action against Terminal and Local 728 under 42 U.S.C.A. § 1981, and Title VII, 42 U.S.C.A. § 2000e et seq., alleging employment discrimination. Penson sought reinstatement, back pay, and injunctive relief. Penson had thus properly complied with procedural and time requirements to litigate his claim after it was considered by the EEOC.
 
 
 4
 Since 1972, however, two broader actions had been pending against Terminal, both charging that it engaged in racially discriminatory employment practices. Private individuals had filed a class action, Allen v. Terminal Transport Co., No. 16687 (N.D.Ga., filed June 2, 1972), which addressed only Terminal's employment practices at its facilities in Georgia, including the one in Atlanta at which Penson was employed. The other action, United States v. Terminal Transport Co., No. 16761 (N.D.Ga., filed June 21, 1972), instituted by the Justice Department, challenged Terminal's employment practices at all of its facilities throughout the United States. The two actions were later consolidated.
 
 
 5
 In 1975, Terminal entered into a consent decree in partial resolution of these two actions. The consent decree was approved by the district court on August 4, 1975, after Penson's termination but while his claim was pending with the EEOC.
 
 
 6
 The consent decree described the class of affected persons in the consolidated action to include "all Black employees of Terminal Transport, present and past, ... insofar as they were affected by any act of racial discrimination occurring since July 2, 1965, to the date of entry of this Decree." While not determining the merits of the employment discrimination claims asserted against Terminal, the consent decree established uniform qualifications for employment, minority recruitment goals, hiring procedures and goals, and procedures by which those persons found by a special magistrate to have been the victims of past discriminatory practices could receive relief in the form of preferential hiring and back pay. The decree required Terminal to give notice of the settlement to all members of the affected class described in the decree and notice of their right to request exclusion from the class or modification of the decree.
 
 
 7
 In January, 1976, the district court certified the class in Allen under Rule 23(b)(2) of the Federal Rules of Civil Procedure. In April, 1976, Terminal mailed notice of the consent decree to each identified class member. Penson admits receiving this notice. Attached to a copy of the consent decree, the notice informed the class members that the decree was binding upon the rights of any black person who was employed at a Terminal facility in Georgia between July 2, 1965, and August 4, 1975. The notice required any class member who wished to object to the terms of the consent decree to file an objection with the clerk of court by June 17, 1976. It provided that a class member, to be considered for relief under the decree, had to present a written claim to the clerk by May 17, 1976. Penson admits that he neither objected to the terms of the consent decree nor filed a claim for relief within the time limit prescribed by the notice.
 
 
 8
 At least one other notice was mailed by Terminal. The second notice, mailed in January, 1977, concerned preferential employment rights. Penson claims he never received this second notice. His claim was accepted as true by the district court for purposes of its disposition of this case.
 
 
 9
 In November, 1978, shortly before hearings were to begin before a special magistrate to determine the particular relief to be accorded persons who had filed claims under the consent decree, Penson filed a motion in his private action seeking "specific relief" under the terms of the decree. Terminal countered with a motion for summary judgment. The district court denied Penson's motion for specific relief under the class action decree because he had failed to file his claim within the prescribed time period. The court also granted Terminal's motion for summary judgment on the ground that Penson's individual suit was precluded by the consent decree in Allen, since Penson was a member of the class represented in that action but had failed to respond to the notice of the decree. Penson appeals both rulings.
 
 
 10
 Two distinct questions are raised in this case. The first is whether the present suit filed by Penson is barred by the prior consent decree that was entered in Allen. The second question is whether Penson may seek relief under the consent decree even though he failed to object to its terms or file a claim under it within the time period prescribed by the notice that he admittedly received.
 
 
 11
 I. Whether the Present Suit is Barred by the Prior Consent Decree
 
 
 12
 A judgment or court-approved settlement entered in a properly certified class action generally will bind an absent class member. See, e. g., Fowler v. Birmingham News Co., 608 F.2d 1055 (5th Cir. 1979); Grigsby v. North Mississippi Medical Center, 586 F.2d 457 (5th Cir. 1978). In Fowler, a case similar to the present action, this Court held that an employee's suit alleging various types of employment discrimination was barred by a prior consent decree entered in a class action which put forth similar claims, where the employee had been a member of the class. The Court noted that the consent decree was "a full and final adjudication of all claims that were or might have been brought" on behalf of the individual employee. 608 F.2d at 1058.
 
 
 13
 Penson argues on this appeal that he is not bound by the consent decree in Allen because the notice he received failed to adequately inform him that the consent decree would be binding, thereby barring his individual suit unless he excluded himself from, or "opted out" of, the class. The class had been certified by the district court under Rule 23(b)(2). Before determining whether the notice adequately apprised Penson of his opt-out right, however, it is necessary to first consider whether Penson possessed such a right in a 23(b) (2) class action and, if so, the source of this right.
 
 
 14
 The law in this Circuit concerning the opt-out rights of members of a Rule 23(b)(2) class action, and the corresponding notice requirements, has not been entirely clear. In an attempt to clarify this law, we hold that although a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class, a district court may mandate such a right pursuant to its discretionary power under Rule 23. If notice is required by the court, then the notice must comply with the terms of that requirement.
 
 
 15
 Applying this rule to the present case, we hold the district court did provide for an opt-out right in the Allen consent decree, but the notice received by Penson did not inform him of this right as required by the decree. The consent decree, therefore, does not preclude Penson's present action.
 
 
 16
 It may be helpful to begin with a short discussion of Rule 23(b)(2) class actions in contrast to 23(b)(3) class actions, and of the law as it presently stands with regard to the opt-out rights of class members. Rule 23(b)(2) provides for certification of a class which has the following characteristics:
 
 
 17
 (T)he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.
 
 
 18
 This rule was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices. See Advisory Committee Notes, 39 F.R.D. 98, 102 (1966). See generally Note, Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: The Transformation of Rule 23(b)(2), 88 Yale L.J. 868, 873 (1979).
 
 
 19
 Rule 23(b)(3), on the other hand, provides for class certification where there exist common questions of law or fact. Monetary relief is most commonly sought in 23(b)(3) actions. See Advisory Committee Notes, 39 F.R.D. at 102-03.
 
 
 20
 Other than the difference in the type of remedy sought, the major practical distinction between the two types of class actions is the different notice requirements which attach under Rule 23. Rule 23(c)(2) provides the notice requirements for Rule 23(b)(3) actions. It specifically provides for notice of an opt-out right and of the binding nature of a judgment in the class action for those who do not exercise this right:
 
 
 21
 The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion....
 
 
 22
 This opt-out right is required in 23(b)(3) actions because it was presumed that, where personal monetary relief is being sought, the individual class members may have a strong interest in pursuing their own litigation. Advisory Committee Notes, 39 F.R.D. at 104-05.
 
 
 23
 Rule 23(d)(2), which applies to all Rule 23 class actions, is the only notice provision applicable to 23(b)(2) actions. It provides only for discretionary notice, the content of which is to be determined by the district court. Thus, Rule 23 does not mandate any notice of an opt-out right for members of a class certified under Rule 23(b)(2), and this Court has held that generally no absolute right to opt out exists. See LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 n.7 (5th Cir. 1975). See generally, 3B Moore's Federal Practice PP 23.55, 23.60.
 
 
 24
 The theory underlying the less stringent notice requirements for Rule 23(b)(2) actions is that there is purportedly a greater decree of "cohesiveness or unity in the class" than in 23(b)(3) actions, which minimizes the need for notice and a right to opt out of the class. See Advisory Committee Notes, 39 F.R.D. at 106. See also Johnson v. General Motors Corp., 598 F.2d 432, 437-38 (5th Cir. 1979). This cohesiveness is claimed to result from both the group nature of the harm alleged and the broad character of the relief sought. See Note, 88 Yale L.J. at 872-73.
 
 
 25
 This theory, however, has broken down with the advent of the "hybrid" Rule 23(b)(2) class action in which individual monetary relief for class members, typically back pay, is sought in addition to classwide injunctive or declaratory relief. These types of actions have especially blossomed in this Circuit. See, e. g., Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974); Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364 (5th Cir. 1974). Such a class action, at least in the relief stage, begins to resemble a 23(b)(3) action, and there has been more concern with protecting the due process rights of the individual class members to ensure they are aware of the opportunity to receive the monetary relief to which they are entitled. Accordingly, this Court has held that where monetary relief is sought and is made available in a Rule 23(b)(2) class action, notice is no longer discretionary but is required at some stage in the proceedings. Johnson v. General Motors Corp., 598 F.2d 432 (5th Cir. 1979). In Johnson, however, we further held that the scope of the notice may vary and need not necessarily satisfy the notice requirements for Rule 23(b)(3) actions.
 
 
 26
 In spite of this strengthening of the notice requirements, this Court has continued to hold that a member of a Rule 23(b)(2) class action has no absolute right to opt out of the class, even where monetary relief has been sought and is made available. See Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1220 (5th Cir. 1978); United States v. United States Steel Corp., 520 F.2d 1043, 1057 (5th Cir. 1975). See also Sagers v. Yellow Freight System, Inc., 529 F.2d 721, 736 (5th Cir. 1976). In United States Steel, for example, we held that members of a class action certified under Rule 23(b)(2) had no right to opt out after a back pay settlement had been reached.
 
 
 27
 At the same time, there have been a number of 23(b)(2) class actions in which a district court has provided for notice of an opt-out right to be sent to the class members. Such notice has been implicitly approved by this Court. See, e. g., Fowler v. Birmingham News Co., 608 F.2d 1055 (5th Cir. 1979); Bogard v. Cook, 586 F.2d 399 (5th Cir. 1978). See also Sledge v. J. P. Stevens, 585 F.2d 625 (4th Cir. 1978). In Fowler, the opportunity to opt out of the class served to ameliorate any "antagonistic interests" between the class representatives and the absent members. 608 F.2d at 1059. In Bogard, the opt-out right was designed to permit the class members to seek monetary relief in individual actions if they so chose rather than be limited to the injunctive relief sought in the class action. 586 F.2d at 407.
 
 
 28
 The conclusion to be drawn from the above survey of the law is that a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class, even where monetary relief is sought and is made available. As a corollary, then, while a class member must be given some form of notice of the pending action or judgment, see Johnson v. General Motors Corp., supra, notice of an opt-out right is not required. A district court, however, acting under its Rule 23(d)(2) discretionary power, may require that an opt-out right and notice thereof be given should it believe that such a right is desirable to protect the interests of the absent class members. See, e. g., Bauman v. United States District Ct., 557 F.2d 650, 659-60 (9th Cir. 1977); Ostapowicz v. Johnson Bronze Co., 54 F.R.D. 465 (W.D. Pa.1972). Cf. DeGier v. McDonald's Corp., 76 F.R.D. 125 (N.D.Cal.1977). The decision by a district court on whether or not to require notice of an opt-out right would be reversed by this Court only if it was shown to be an abuse of discretion.
 
 
 29
 Since in the present case Penson has no absolute right to opt out of the Allen class, the inquiry focuses on whether the district court in fact ordered notice of an opt-out right and, if so, whether the notice actually sent informed Penson of this right. The Allen consent decree clearly required notice of an opt-out right but the notice which Penson received did not so inform him.
 
 
 30
 Paragraph 35 of the consent decree, entitled "Class Notice," states that "Notice of their rights to request exclusion from the class under Rule 23 ... shall be given to all members of the class in (Allen)." The paragraph provides later that "Class members who desire to be excluded from the provisions of this Decree under Rule 23, ..., or who have objection to ... the Decree shall state this objection in writing to this Court no later than 60 days after entry" (emphasis supplied).
 
 
 31
 The notice sent to Penson, however, did not provide that he had a right to exclude himself from the class. It merely informed him of the right to object to the terms of the decree, which is different from a right of exclusion. See Appendix. The difference between these two rights is evidenced by their separate treatment in paragraph 35 of the consent decree. The notice also indicated it was not intended to vary any terms of the decree itself.
 
 
 32
 Appellee contends the notice did indicate the decree would be "binding" on the class members which, it is argued, warned Penson of the effect of this decree on his individual suit. Under the terms of the decree, however, the notice should have stated the decree was binding only if the class member did not exclude himself from the class. In the absence of such opt-out language, it was reasonable for Penson to assume the consent decree would have no effect on his personal suit so long as he did not accept relief under the decree.
 
 
 33
 Curiously, the notice actually received by Penson was one of three alternative initial notices prepared by Terminal's counsel and approved by order of the district court. It is significant that the notices which were not sent to Penson expressly provided for a right to opt out. One of these notices provided: "As such a member of the Affected Class, you will be bound by the terms of the Consent Decree unless you elect, pursuant to paragraph 35 of the Consent Decree, to be excluded from it" (emphasis supplied). The other notice was even more explicit about the effect of the decree on individual suits: "You may preserve your right to file suit on your individual monetary claim against Terminal, if any, by declining the offer of monetary compensation and refusing to sign the release...." The record is unclear whether either of these two notices was in fact sent to any members of the class, but it is undisputed that Penson did not receive them. Either notice would have adequately informed Penson of his opt-out right. The notice he received did not.
 
 
 34
 This Court has consistently held that a class member's individual suit will not be barred by res judicata if notice of the prior judgment in the class action is inadequate. See, e. g., Johnson v. General Motors Corp., 598 F.2d 432 (5th Cir. 1979); Bogard v. Cook, 586 F.2d 399 (5th Cir. 1978). Cf. Robinson v. Union Carbide Corp., 544 F.2d 1258 (5th Cir. 1977). Since the notice of the Allen consent decree that was mailed to Penson was inadequate, Penson's present action is not barred by res judicata. We therefore reverse the district court's grant of Terminal's motion for summary judgment.
 
 
 35
 Although this decision requires reversal of the district court judgment, Penson offers two other arguments to avoid the res judicata bar of the consent decree entered in Allen which deserve comment. First, he contends the filing of a discrimination charge with the EEOC prior to the consent decree in Allen accorded him a statutory right which could not be extinguished by the decree.
 
 
 36
 Penson filed his charge of discrimination against Terminal with the EEOC shortly after his discharge in 1974, approximately a year before the consent decree was entered in Allen, although Allen and the United States case with which it was consolidated had been pending since 1972. Penson did not institute the present action until 1978, after he received the right-to-sue letter from the EEOC. This was three years after the consent decree in Allen.
 
 
 37
 Penson cites no cases which support the argument that the filing of the charge with the EEOC prior to the consent decree accorded him a vested statutory right which could not be barred. The cases are persuasive to the contrary. A judgment or consent decree entered in a class action can bind the absent class member even though the member had filed a claim or instituted a personal suit before the decision in the class action. See, e. g., National Student Marketing Litigation v. Barnes Plaintiffs, 530 F.2d 1012 (D.C. Cir.1976); Manhattan-Ward, Inc. v. Grinnell Corp., 490 F.2d 1183 (2d Cir. 1974); Taunton Gardens Co. v. Hills, 421 F.Supp. 524 (D.Mass.1976), aff'd, 557 F.2d 877 (1st Cir. 1977). The time sequence of the filing of the individual claim and the class action is therefore irrelevant to the operation of the res judicata bar.
 
 
 38
 Penson also contends that his particular claim was not litigated in Allen, because his challenge was against Terminal's termination policies while Allen involved an attack on the company's policies concerning hiring, promotion, seniority and transfers. In addition, Penson asserts that he was not a member of the Allen class because the consent decree did not apply to those "discharged for cause." Penson had been discharged ostensibly for his poor attendance record.
 
 
 39
 The consent decree, however, explicitly applied to "all Black employees of Terminal Transport, present and past, ... insofar as they were affected by any act of racial discrimination occurring since July 2, 1965, to the date of the entry of this decree." This clearly includes Penson. As the district court noted, Penson would have been entitled to relief under the decree upon a showing that he was subject to discrimination, even though the Allen litigation may not have directly involved Terminal's termination policies.
 
 
 40
 II. Whether Penson May Seek Relief Under the Consent Decree
 
 
 41
 In his separate action against Terminal, Penson filed a motion for "specific relief" in which he sought to pursue his claim under the terms of the consent decree. In its order granting Terminal's motion for summary judgment, the district court also denied the motion for specific relief on the ground that Penson had failed to file the claim within the time period prescribed in the notice he received. We affirm.
 
 
 42
 The notice sent to Penson clearly specified that a class member, in order to be considered for relief under the decree, had to submit a claim to the clerk of court no later than May 17, 1976. It is undisputed that Penson did not file a claim by this date or otherwise respond to the notice.
 
 
 43
 It was within the discretion of the district court to require class members to submit proof of claim by a certain date in order to be eligible for relief under the decree. See, e. g., Robinson v. Union Carbide Corp., 544 F.2d 1258, 1261-65 (5th Cir. 1977) (Wisdom, J., specially concurring); B & B Investment Club v. Kleinert's, Inc., 62 F.R.D. 140, 146-51 (E.D. Pa.1974). See generally 3B Moore's Federal Practice P 23.55. Since Penson failed to establish any basis for excusing his failure to file a claim before the due date specified in the notice, the district court did not abuse its discretion by denying Penson's out-of-time motion for relief.
 
 
 44
 Penson, however, has suggested in his brief that his response to the 1976 notice was to call the local EEOC office that was handling his discrimination charge against Terminal. Penson claims that this office informed him that his charge was still being "investigated," and that he concluded in good faith, albeit erroneously, that no further response to the notice was necessary. These facts may serve as the basis for relief under Rule 6(b)(2) of the Federal Rules of Civil Procedure, which would permit a court to grant an enlargement of time within which to file a claim under the decree on the ground that the failure to timely act was the result of "excusable neglect." See In re Four Seasons Securities Law Litigation, 493 F.2d 1288 (10th Cir. 1974); Manhattan-Ward, Inc. v. Grinnell Corp., 490 F.2d 1183 (2d Cir. 1974).
 
 
 45
 If Penson still desires to seek relief under the Allen consent decree, he may file a motion pursuant to Rule 6(b)(2) with the district court having jurisdiction over the decree, together with evidence supporting his assertion of "excusable neglect." It is unclear from the record, however, whether the district court still has jurisdiction over the decree, see Consent Decree P 39, or whether any funds are still available for distribution to claimants, see Consent Decree P 22(b).
 
 
 46
 Of course, Penson's personal action would be barred if he seeks and is given the opportunity to pursue his claim under the terms of the consent decree, whether or not he obtains relief thereunder. By presenting his claim under the decree, Penson would show his intention to remain a member of the class and would thereby be bound by the decision of the special magistrate appointed to hear the claims filed.
 
 CONCLUSION
 
 47
 The district court's denial of appellant's motion for specific relief is affirmed. The grant of appellee's motion for summary judgment is reversed, and the case is remanded for further proceedings. This decision, of course, only removes the consent decree as an obstacle to plaintiff's suit and does not address other defenses which have been or may be asserted against his claims.
 
 
 48
 AFFIRMED IN PART, REVERSED AND REMANDED.
 
 APPENDIX
 
 49
 The notice of the consent decree received by Penson contained in part:
 
 
 50
 Please take notice that on August 4, 1975, the United States District Court for the Northern District of Georgia, Atlanta Division, entered a Consent Decree in Partial Resolution of Suit in consolidated actions No. 16761 (United States v. Terminal Transport Co.) and No. 16687 (Allen v. Terminal Transport Co.). The purpose of this notice is to give notice to the public of the entry of this Decree and to provide a summary of portions of the Decree. This notice is not intended to vary any of the terms of the Decree itself. A complete copy of the Decree is attached to this Notice.
 
 
 51
 This Decree provides both monetary compensation and transfer or employment opportunity to any black employee, former employee or rejected applicant for employment at Terminal Transport who was a victim of any act of racial discrimination on the part of Terminal Transport between July 2, 1965 and August 4, 1975.
 
 
 52
 The Consent Decree is binding on the rights of all black persons who were employed at or who applied for and were denied employment at Terminal Transport Company locations in Georgia between July 2, 1965 to August 4, 1975. If you are in either of these groups and you are not satisfied with the terms of the Consent Decree you may object to it by filing your objections in writing by no later than June 17, 1976. The objections should refer to Allen v. Terminal Transport Co. and should be sent to:
 
 Clerk
 United States District Court
 Northern District of Georgia
 Old Post Office Building
 Atlanta, Georgia 30303
 
 53
 If you are satisfied with the terms of the Consent Decree but you believe you should be considered for the employment and/or monetary relief provided in the Consent Decree, you must present your claims in writing postmarked no later than May 17, 1976. The claims should be sent to the Clerk at the above address....