## In re COMPACT DISC MINIMUM ADVERTISED PRICE ANTI-TRUST LITIGATION.

### MDL No. 1361.

United States District Court,
D. Maine.

May 25, 2006.

Supplemental Order June 22, 2006.

Francis E. Ackerman, Maine Assistant Attorney General, Augusta, ME, Liaison Counsel for Plaintiff States.

Linda Gargiulo, Assistant Attorney General, New York, NY, Lizabeth Leeds, Assistant Attorney General, Tallahassee, FL, Lead Counsel for Plaintiff States.

Alfred C. Frawley, III, Gregory P. Hansel, Preti, Flaherty, Beliveau & Haley, LLC, Portland, ME, Liaison Counsel for Private Plaintiffs.

Joseph C. Kohn, Michael J. Boni, Kohn, Swift & Graf, PC, Philadelphia, PA, Lead Counsel for Private Plaintiffs.

Michael Jaffe, Wolf Haldenstein Adler Freeman & Herz, LLP, New York, NY, for Trowbridge Plaintiffs.

William J. Kayatta, Jr., Clifford H. Ruprecht, Pierce Atwood, Portland, ME, Liaison Counsel for Distributor Defendants.

Joseph H. Groff, III, Jensen, Baird, Gardner & Henry, Portland, ME, Liaison Counsel for Retailer Defendants.

## ORDER ON FINAL REPORT AND RECOMMENDATION: NOTICE AND HEARING

HORNBY, District Judge.

### I. INTRODUCTION

This *parens patriae* and class action antitrust lawsuit concerning the pricing of music CDs reached final settlement almost three years ago. Forty-three States, Commonwealths and Territories are represented by their respective Attorneys General. The remaining jurisdictions within the United States are represented by private named plaintiffs and class counsel.[1] The multidistrict settlement provided for payments to consumers from a settlement fund of $67.375 million, distribution of 5.6 million free music CDs to nonprofit, charitable and governmental organizations, and injunctive relief. *See generally In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D.Me.2003) (approving settlement).

Now there are around 93,000 CDs and over $5.5 million remaining to be distributed for the reasons I described in my Order of March 31, 2006. Some months ago the State Attorneys General and the private class plaintiffs submitted a Final Report and Recommendation proposing how to distribute the leftover money and CDs. *See* Pls.' Final Report & Recommendation ("Final Report") (Docket Item 384). Basically the proposal involves: paying $741,000 in additional administrative and accounting expenses;[2] distributing approximately $3.73 million pro rata[3] to each State, Commonwealth and Territory (the money will be allotted to nonprofit, charitable and governmental organizations according to jurisdiction-specific "Supplemental Cy Pres Plans"); holding a little over $1 million in reserve for address tracing and re-mailing checks to over 72,000 claimants whose checks were returned undeliverable (the administrative cost for this would be an additional $75,000, and the success rate is estimated at 25%–50%); and granting any leftover cash from the re-mailing in varying percentages to three nonprofit or governmental entities (based on the predicted success rate, this would range from around $500,000 to $750,000). Final Report at 2–3. As for the leftover CDs, those jurisdictions still with undistributed CDs would distribute them (around 45,000 CDs) to new nonprofit, charitable or governmental recipients, and any CDs remaining with the Administrator (around 48,000) would go to the United Ser-

---

1. I will refer generically to all of the States, Commonwealths, and Territories involved in this litigation, as "jurisdictions."

2. Originally, the lawyers for the private plaintiffs also sought a little over $6,000 in additional expenses. I denied that request in my last Order.

3. Each jurisdiction's share of the fund will be in proportion to its percentage of the total population of the United States, territories and possessions (essentially, a per capita method). Final Report at 11.

vice Organization (USO), a nonprofit organization. *Id.* at 3.

The proposal raises issues not uncommon at the conclusion of such settlements: (1) the value of reaching out to additional class members—at this late date—in order to distribute to them their portion of the settlement, when it will cause additional administrative expense and may be only modestly successful; and (2) the court's role in what is essentially "grant-making," for *cy pres* distribution of leftover settlement proceeds requires the court to ensure that the chosen recipients and distributions have a relationship to the original purposes of the class action, to avoid favoritism, and to ensure that the monies are properly used. I wish to make clear that these concerns do not implicate the professionalism, judgment or good faith of these lawyers, whether Attorneys General or private counsel. Instead, the issues raised are institutional and systemic, not particular to this case or these parties.

After the Final Report was initially filed, I ordered a hearing on the proposals, directing the parties to address who should receive notice of the hearing (and inviting them to answer any of the other concerns I had, including whether the proposal complied with the Settlement Agreement) and to disclose whether they had relationships with any of the proposed recipients for the leftover funds and CDs. *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* MDL No. 00–1361, 2006 WL 890684, *5 (D.Me. Mar. 31, 2006). The parties have responded and have addressed a number of my concerns. Nevertheless, I conclude that a hearing is still appropriate, and order that notice be given, but only to those jurisdictions' Attorneys General who fail to approve in writing their respective Supplemental Cy Pres Distribution Plans. At the hearing the parties' arguments should address the increase in admin-

istrative expenses, the expenditure of funds to locate those consumers who have failed to cash their checks in relationship to the projected success rate, the proposals for distributing the leftover CDs and funds, and any relationships with proposed beneficiaries.

## II. FACTUAL BACKGROUND & ARGUMENTS OF THE PARTIES

I recited the relevant facts in my earlier Order.

In response to my Order, the Attorneys General and private class counsel argue that no notice need be given of the proposed payments and distribution. *See generally* Pls.' Resp. to Order to Show Cause ("Pls.' Resp.") (Docket Item 389). They reason that their proposal does not modify the Settlement Agreement because the Settlement Agreement expressly segregated the Cy Pres Distribution Plan in contemplation of a situation such as this. (The Settlement Agreement ¶ 1.2 states that "[t]he Cy Pres Distribution Plan ... is not part of the Settlement Agreement.")[4] Additionally, they point out that all potential class members[5] received notice of the Settlement Agreement and the Cy Pres Distribution Plan and were heard. Since I approved the Settlement Agreement and its segregation of the Cy Pres Distribution Plan over all objections, the State Attorneys General and private class counsel say that further notice is both unnecessary and costly. The Distributor Defendants echo these arguments. *See* Distributor Defs.' Resp. to Order to Show Cause (Docket Item 388).

## III. WHAT NOTICE IS REQUIRED

■ In class actions, for "any step in the action," I may order "that notice be given in such manner as the court may direct to some or all of the [class] members" for the "protec-

---

4. "There are actually four settlement agreements [comprising Docket Items 183–86]. They are uniform in most respects ... and I shall treat them collectively as one settlement agreement ...." *In re Compact Disc,* 216 F.R.D. at 206 n. 14. Accordingly, my citations hereinafter shall be to the "Settlement Agreement," and shall refer to provisions of the Distributor Defendants' Settlement Agreement (Docket Item 185).

5. The residents of those States whose Attorneys General are suing in their *parens patriae* capacity are not, strictly speaking, "class" members. *See* 15 U.S.C. § 15c (2000). Nevertheless, it is convenient to use the terms for both those persons, and the actual Fed.R.Civ.P. 23 class members of the private plaintiff states. I shall do so without further explanation in the opinion.

tion" of the class members or "otherwise for the fair conduct of the action ...." Fed. R.Civ.P. 23(d)(2). However, "the notice contemplated under Rule 23(d)(2) is discretionary," and does not *require* the district court to give notice ...."[6] *Navarro–Ayala v. Hernandez–Colon*, 951 F.2d 1325, 1336 (1st Cir. 1991) (emphasis added) (citing *Penson v. Terminal Transport Co.*, 634 F.2d 989, 993 (5th Cir.1981); *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826, 878 n. 86 (5th Cir.1975)); *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8:15 (4th ed.2002) ("Rule 23(d)(2) ... codif[ies] the inherent judicial power to give notice to class members other than the named parties *when the circumstances warrant it.*") (emphasis added).

■ In my earlier Order, I pointed out that the Advisory Committee Notes expressly approve of giving notice to class members in the context of "modification of a consent decree." *In re Compact Disc*, 2006 WL 890684 at *5 n. 11; *see also* Rule 23(d)(2) Advisory Comm. Notes (1966 Amendment). In light of this Note, I urged the parties to address whether their proposal amounts, analogously, to a modification of the Settlement Agreement after it had already received final approval. In response, the parties contend that their proposal for distribution of the leftover CDs and money

does not amount to modification of the Settlement Agreement, and that notice has already been adequate.

For the most part, I am persuaded. I agree that the proposed distribution of leftover money and CDs does not modify the Settlement Agreement itself. Instead, it is a *cy pres* distribution that the parties' agreement deliberately made separate, a separation that I approved. Each Settlement Agreement explicitly states that "[t]he Cy Pres Distribution Plan ... is not part of the Settlement Agreement." Settlement Agreement ¶ 1.2. The long-form notice that was approved and employed[7] provided that "[a]ny funds remaining in the Settlement Fund after payment of the costs and fees ... and after all direct payments to [class members] shall be subject to *cy pres* distribution." Mot. for Final Approval of Settlement, Ex. A (Potter Aff.), Ex. II (Docket Item 241). As for the CDs, while the long-form notice did not discuss distribution of remaining or leftover CDs, it did state generally: "CDs are to be distributed ... pursuant to the Cy Pres Distribution Plan ... to not-for-profit corporations and/or charitable organizations and/or governmental or public entities ... to further music-related purposes or programs ...." *Id.* These provisions were sufficient to place on notice any who wished to object. Although several objections were raised,[8] I

---

**6.** In *parens patriae* lawsuits, the Clayton Act states that notice shall be given "at such times, in such manner, and with such content as the court may direct ...." 15 U.S.C. § 15c(b)(1) (2000). Because the notice contemplated by this provision of the Clayton Act is entirely discretionary, as it is in Fed.R.Civ.P. 23(d)(2), I conclude that the two provisions impose upon me the same obligation. *See* H.R.Rep. No. 94–499, at 11–12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2572, 2581–82 (House committee report explaining that notice requirements of 15 U.S.C. § 15c governed by considerations of due process); Fed. R.Civ.P. 23(d)(2) Advisory Comm. Notes (1966 Amendment) (stating that discretionary notice of Rule 23(d)(2) designed to fulfill requirements of due process).

**7.** Pursuant to the mandatory notice provisions of both Rule 23 and 15 U.S.C. § 15c, I approved as sufficient an extensive notice program:

[T]he notice program consisted of print, broadcast and electronic publication, and employed a short-form and long-form notice. Both forms described the basic elements of the case,

the general terms of the proposed settlement, the legal rights of affected consumers, and the process for filing a claim....

The short-form notice appeared in numerous paid media outlets, including thirteen consumer magazines, two nationally-circulated newspaper supplements and nine newspapers. The long-form notice was published on the Internet and sent by direct mail to anyone who requested it. In addition, other print and electronic media voluntarily covered the proposed settlement and the claims process extensively.

*In re Compact Disc*, 216 F.R.D. at 203. At the time I approved the settlement, I found that this notice was "excellently designed" and "ultimately highly successful" in reaching class members. *Id.* at 204.

**8.** *See, e.g.,* Fetcher and McGuigan Objection at 4–5 (Docket Item 224) (challenging separation and arguing that *cy pres* recipients should be identified); Spillane Objection at 3–4 (Docket Item 231) (challenging separation). The fact that objections were raised about these issues shows that notice was sufficient to allow class members

nevertheless gave final approval to the Settlements and the consequent segregation of the Cy Pres Distribution Plan. Additionally, as I have already pointed out, in their Final Approval Memorandum the class representatives stated:

[We] anticipate there will be money remaining in the Settlement Fund as a result of undistributed accrued interest as well as uncashed consumer claims checks. [We] will [apprise] the Court of the amount remaining and present a proposal regarding its distribution when the total amount of the residual is known.

Mem. in Support of Mot. for Final Approval at 7 (Docket Item 241). Thus, there is no surprise here, except for the amount of money remaining.

Because of the date this lawsuit began, it is not subject to the new notice requirements of the Class Action Fairness Act of 2005 (CAFA), Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). CAFA requires defendants to give notice to the Attorneys General of each state where a class member resides when a class action like this is settled. 28 U.S.C.A. § 1715 (West Supp. 1 2005). Despite the fact that CAFA does not apply, I find its notice provisions persuasive and illuminating in the context of the discretionary notice I now contemplate. $5.5 million is a substantial sum of money. Attorneys General have obligations to the public of the states they represent. Currently, 43 Attorneys General are aware of the proposal for distributing excess funds and CDs. Ensuring that all Attorneys General receive notice and an opportunity to be heard would give me some confidence that the proposals are both fair and beneficial.

Thus, I conclude that notice of the Supplemental Cy Pres Distribution Plan [9] need not be given to either the class members or the Objectors. However, notice shall be given to all Attorneys General, including those who are not party to the lawsuit. The plaintiffs shall either file the written agreement of those Attorneys General to the proposed payments and distribution, or provide proof of service upon them of the Final Report and Recommendation (the document that describes generally the proposed payments and distribution of leftover CDs and funds), each jurisdiction's respective Supplemental Cy Pres Distribution Plan, and notice of the hearing (the Clerk's Office can provide a date to counsel, a date at least 45 days after the projected service date). I find it unnecessary to order any other notice.

## IV. THE SCOPE OF THE HEARING

At the hearing, the parties shall be prepared to support the increase in administrative expenses, the expenditure of funds to locate those consumers who have failed to cash their checks in relationship to the projected success rate, and the proposals for distributing the leftover CDs and funds; and to discuss any relationships identified with proposed beneficiaries.

I do note that on its face the CD distribution proposals (about 45,000 CDs distributed by individual jurisdictions to new nonprofit, charitable or governmental recipients, and about 48,000 CDs distributed by the Administrator to the USO) seem plausible, considering that the leftover CDs are a very small percentage of those successfully distributed, and presumably are decreasing in value over time.

I also note that the proposal for distributing the leftover funds pro rata among the States, Commonwealths, and Territories seems reasonable for the most part. However, I wish to hear argument as to why this distribution should not be delayed until the outcome of the address tracing and re-mailing is known. If distribution were delayed until then, the amount of money going pro rata to the *parens patriae* and other jurisdictions as approved by their respective Attorneys General would increase, and no money would need to be distributed directly from

---

to be heard about them, and that the fact of *cy pres* distribution (even post-approval) was readily apparent.

9. I remind the parties that it appears that Supplemental Cy Pres Distribution Plans for all jurisdictions have been submitted except Alabama, Colorado, the Northern Mariana Islands, the Virgin Islands, and Guam. Pls.' Resp. at 13 n. 10, n. 11. I expect these to be filed with the court before or at the upcoming hearing.

the Settlement Fund to national nonprofit or governmental organizations. In other words, I could avoid making additional "grants," as well as avoid any continuing monitoring in upcoming years. *See generally, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 00–1361, 2005 WL 1923446, *3 (D.Me. Aug. 9, 2005) (requiring *cy pres* recipients to report to court for three years, in music club portion of case). Federal judges are not generally equipped to be charitable foundations: we are not accountable to boards or members for funding decisions we make; we are not accustomed to deciding whether certain nonprofit entities are more "deserving" of limited funds than others; and we do not have the institutional resources and competencies to monitor that "grantees" abide by the conditions we or the settlement agreements set.

Finally, I want to hear argument as to whether I even have the power to approve the fund distribution proposals of those States suing in their *parens patriae* role. As I noted at the time I approved the settlement originally, when a *parens patriae* suit proceeds to judgment, the Clayton Act contains "no specification of what the State may, or must, do with" an award it receives. *In re Compact Disc*, 216 F.R.D. at 209. The Clayton Act assigns me the role of approving a settlement, 15 U.S.C. § 15c(c); I am doubtful whether that includes telling a State party what to do with awards it receives.

### V. CONCLUSION

After consulting with counsel, the Clerk's Office shall schedule a hearing. I ORDER the plaintiffs' counsel to give at least 45 days notice of the hearing, as well as a copy of the Final Report and Recommendation and that jurisdiction's Supplemental Cy Pres Distribution Plan, to the Attorneys General for those States, Commonwealths and Territories whose Attorney General does not approve in writing the Supplemental Cy Pres Distribution Plan. No other notice is necessary.

So ORDERED.

### FURTHER ORDER ON FINAL REPORT AND RECOMMENDATION

Some Attorneys General have notified the case manager that they find my Order of May 25, 2006, ambiguous on who must receive notice.

My Order says on page 3 that notice must be given "only to those jurisdictions' Attorneys General who fail to approve in writing their respective Supplemental Cy Pres Distribution Plans." Order on Final Report and Recommendation at 3–4 (Docket Item 391). On page 11, the last paragraph of the Order, it says that notice must be given to the Attorneys General who do "not approve in writing the Supplemental Cy Pres Distribution Plan. No other notice is necessary." *Id.* at 11. The apparently confusing provision is Section III, where it talks about notice "to all Attorneys General." *Id.* at 8. But that section then provides that the written agreement of an Attorney General to the proposed payments and distribution demonstrates notice. At least that was my intent.

In sum, separate notice of the hearing must be provided only to those Attorneys General who do *not* agree in writing to the payments and distribution. That way, those who do not consent know that they have the right to be heard. If instead they agree to the proposed payments and distribution, they do not require notice of a right to be heard, but the "plaintiffs shall [still] file the written agreement of those Attorneys General" with the Court, *see id.*

I apologize for the confusion and hope that this supplemental statement clarifies the scope of the required notice.

So ORDERED.