CV REIT, INC., et al., Plaintiffs,

v.

Irwin LEVY, et al., Defendants.

No. 91–8177–CIV.

United States District Court,
S.D. Florida.

June 26, 1992.

Michael Pucillo, Greenfield & Chimicles, West Palm Beach, Fla., for plaintiffs.

Richard Garrett, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the report and recommendation of the Hon. Ann E. Vitunac, United States Magistrate Judge for the Southern District of Florida. The Magistrate Judge's report, dated May 30, 1992, recommended that the plaintiffs' motion for class certification be granted. No objections to the Magistrate Judge's report and recommendation have been filed with this Court.

Having reviewed, *de novo*, the Magistrate Judge's report of May 30, 1992, the record, and being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED that the above-mentioned report of the Magistrate be ratified, affirmed, and made the Order

of the District Court. The plaintiffs' motion for class certification is GRANTED.

DONE AND ORDERED.

## REPORT AND RECOMMENDATION

VITUNAC, United States Magistrate Judge.

This cause is before this Court on order of reference (DE 54) from United States District Court Judge Jose A. Gonzalez for further proceedings and report and recommendations concerning disposition of the Plaintiffs' motion for class action certification (DE 31, DE 32).

## RELEVANT BACKGROUND

The Plaintiffs filed this cause of action on April 26, 1991 (DE 1, Complaint) alleging violations of both Section 10(b) of the Securities Exchange Act of 1934 (hereinafter referred to as "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5. The Plaintiffs bring Count I on behalf of a class of purchasers of CV Reit, Inc. ("CV Reit") common stock during the period from October 1, 1988 through April 15, 1991 ("the class period"). The Plaintiffs bring Count II derivatively on behalf of CV Reit.

### (1) The Parties

CV Reit was originally formed as Cenvill Communities, Inc. (Complaint, para. 8). In January, 1982, Cenvill Communities, Inc. separated its existing business into two separate entities: Cenvill Investors, Inc. ("Cenvill Investors") and Cenvill Development Corporation ("Cenvill Development"). In 1985, First American Bank and Trust Company ("First American") acquired Cenvill Development. In May, 1990, Cenvill Investors changed its name to CV Reit (Complaint, para. 8).

CV Reit's principal business is investing in real estate mortgage loans (Complaint, para. 8). CV Reit currently has in excess of seven million shares of common stock outstanding (Complaint, para. 7). Its stock is regularly traded on the New York Stock Exchange (Complaint, para. 7).

The Defendants, with the exception of Jack Jaiven, have served as either senior officers and/or directors of CV Reit during the class period (Complaint, para. 9). H. Irwin Levy served as Chairman of the Board of CV Reit. Alvin Wilensky served as President and Chief Executive Officer of CV Reit. Claudia Evans acted as a Director and is also a principal shareholder. Mac Gache acted as a Director and is also a principal shareholder. From December, 1988 to the end of the class period, Jaiven served as CV Reit's Vice President, Assistant Secretary and Treasurer. Prior to December, 1988, Jaiven acted as Executive Vice–President and Chief Financial Officer of First American. Before that term with First American, Jaiven was Vice–President of CV Reit.

The Plaintiffs, Verne and Stan Charles, own in excess of 7,000 shares of CV Reit's common stock (Complaint, para. 5). The Charles' have owned CV Reit common stock since August, 1986 (Complaint, para. 5).

### (2) The Allegations

As noted above and alleged in the complaint, each of the Defendants served in executive managerial and directorial positions within CV Reit (Complaint, para. 11). The Plaintiffs allege that Defendants' Levy, Wilensky and Jaiven were personally involved in questionable financial transactions with CV Reit (Complaint, para. 10). The Plaintiffs also allege that, as of March 1, 1989, Defendants' Levy, Evans and Gache controlled 25% of CV Reit's stock (Complaint, para. 10). For these reasons, the Plaintiffs allege that these Defendants were controlling persons within the meaning of § 20 of the Exchange Act and had personal knowledge as to the true financial condition of CV Reit (Complaint, para. 11).

The Plaintiffs allege that, throughout the class period, the Defendants portrayed CV Reit as a "strong, stable, well-managed company with stable mortgage loans" (DE 31, p. 4) though the company was suffering great financial losses. The Plaintiffs allege that the Defendants, participated in, aided and abetted, and engaged in a com-

mon course of conduct which resulted in the issuance of a series of public statements, many of them group published, which were false, misleading and materially omissive in their efforts to conceal the true financial condition and business prospects of the company, including the condition of the mortgage loan portfolio (Complaint, para. 11). The Plaintiffs allege that these statements deceived the investing public as to the true financial condition, earnings, value of assets and net worth of CV Reit. The Plaintiffs allege that these materially false and misleading statements operated to artificially inflate the market price of CV Reit stock, damaging the Plaintiffs and other members of the class (Complaint, para. 65).

The Plaintiffs focus upon three series of events which underlie this alleged course of conduct. This Court will address each in turn. The first concerns lending for the development of Boca Grove Plantation ("Boca Grove"). CV Reit held two mortgage loans, totalling approximately $14.25 million, for development of Boca Grove which came due on September 30, 1988. The Plaintiffs allege that, throughout the class period, the Defendants failed to disclose that these loans were not worth near their reported book value, could not be collected by CV Reit and were in default on September 30, 1988 (Complaint, para. 35).

In their complaint, the Plaintiffs allege that Defendants Levy and Wilensky knew, prior to the September 30, 1988 due date, that there would be no payment made on the Boca Grove loans because Boca Grove had just sued CV Reit, Levy and Wilensky seeking to have the loans declared invalid on grounds of usury, fraud and breach of contract (Complaint, para. 36). Although CV Reit immediately filed a foreclosure action to recover the $14.25 million, the Plaintiffs allege that the Defendants knew by that time that the security for the Boca Grove loans was inadequate and that a loss reserve should have been made but was not (Complaint, para. 36–37). Although the Defendants disclosed in the 1988 Annual Report that the loans had matured and that CV Reit commenced a foreclosure proceeding against Boca Grove Ltd., the Plaintiffs allege that the Defendants nonetheless failed to disclose the true condition of the loans (Complaint, para. 39). The 1988 Annual Report stated that "management believes that the value of the collateral will be adequate to meet the $14.3 million aggregate outstanding balance of the loans" (Complaint, para. 39).

The Plaintiffs allege that several months later, however, in August, 1989, CV Reit's counsel stated, in a motion for appointment of a receiver for the Boca Grove development, that "the value of the collateral securing the debt is insufficient to satisfy the amount of the debt" (Complaint. para. 41). The Plaintiffs assert that this statement is in stark contrast to what was being disclosed to the public (DE 31, p. 6). In February, 1991, the foreclosure action settled and CV Reit received between $4 and $5.5 million in satisfaction of the $14.3 million dollar debt (Complaint, para. 43). The Plaintiffs allege that during the class period, the Defendants never reported to shareholders that the Boca Grove loans were worth anything less than $13 million.

The second series of events which underlie the Plaintiffs' allegations involves the $50 million in problem mortgage notes which CV Reit held for Cenvill Development. Before it was acquired by First American in 1985, Cenvill Development was controlled by Defendant Levy (Complaint, para. 44). The Plaintiffs allege that, during the class period, over $43 million of the Cenvill Development loans were collateralized by residential condominium projects and recreational facilities under net leases to corporations controlled by Levy (Complaint, para. 45).

In September, 1989, approximately $38 million of the $50 million in mortgage notes became due. The Plaintiffs allege that, thereafter, the Defendants issued a series of confusing disclosures with respect to the status of the Cenvill Development loans (Complaint, para. 46). The Plaintiffs allege that, during the course of the eighteen months following the notes' default, the Defendants announced alternating means by which CV Reit was handling these loans, including extensions, foreclosure ac-

tions and agreements in principle (Complaint, para. 46–49). The Plaintiffs allege that on March 1, 1991, CV Reit announced that another agreement in principle had been reached with respect to the foreclosure action and the reinstatement of the loans (Complaint, para. 50). This agreement in principle required CV Reit to provide additional financing for the same properties which it had foreclosed and to purchase additional assets held by these entities (Complaint, para. 50).

The third series of events concern CV Reit's relationship with First American. The Plaintiffs contend that the Defendants fraudulently reported the true book values of a series of transactions undertaken with First American when, in fact, these investments had virtually no book value at the time they were made. The Plaintiffs detail four transactions in their complaint, totalling $33 million, which came due during the class period and for which CV Reit was able to recoup only $1.9 million of its original investment.

The first transaction involves CV Reit's September, 1985 acquisition of a controlling interest in a partnership with First American. The Plaintiffs allege that the partnership then purchased a $6.8 million loan from First American. In 1988, a Florida court found the loan to be usurious and unenforceable. The Plaintiffs allege that the acquisition of this loan was nothing more than a "dumping of a high risk loan in CV Reit with the knowledge and consent of Defendants Levy and Wilensky" (Complaint, para. 52). The second transaction involves CV Reit's April, 1986 purchase of a 50% fourth mortgage loan participation from First American in a $10 million loan commitment. The Plaintiffs allege that CV Reit represented in 1987 public statements that it had initiated foreclosure proceedings on this loan when, in fact, such proceedings were not initiated by CV Reit, but by a senior mortgagee (Complaint, para. 56). The Plaintiffs allege that the Defendants failed to disclose until April, 1990 that there were several tiers of mortgages senior to CV Reit's (Complaint, para. 56). The Plaintiffs allege that it was not until the close of the class period that the Defen-

dants acknowledged that there were no funds left to apply to CV Reit's fourth mortgage and that the $10 million book value of this loan would be reduced to zero (Complaint, para. 56).

The Plaintiffs identify two other transactions with First American. In one, CV Reit provided the purchase funds to a subsidiary of First American for real estate and equipment in exchange for mortgage notes to the First American subsidiary, which notes went into default after ten months and remain unpaid (Complaint, para. 54). In the other, CV Reit loaned $16 million to a developer who was controlled in part by First American. After the developer defaulted, the Plaintiffs allege that CV Reit settled the matter by agreeing to provide additional financing and to purchase additional assets for cash (Complaint, para. 55).

## CLASS CERTIFICATION STANDARD

Class representatives must establish the four prerequisites of Rule 23(a) and one or more of the three alternatives of Rule 23(b) to be entitled to class action certification. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n. 2 (11th Cir.1987). The four prerequisites of Rule 23(a) are:

(1) that the class is so numerous that joinder of all members is impracticable;

(2) that there are questions of law or fact common to the class;

(3) that the claims or defenses of the representatives parties are typical of the claims or defenses of the class; and

(4) that the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed.R.Civ.P. With respect to the three alternatives available, the Plaintiff class representatives in this case rely upon alternative Rule 23(b)(3). Rule 23(b)(3) provides:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and effi-

cient adjudication of the controversy. the matters pertinent to the findings include: (A) the interest of members of the class is individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3), Fed. Rule Civ.P.

█ The class representatives bear the burden of establishing these prerequisites. *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 427 (S.D.Fla.1991), citing *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). In making a determination as to whether the named class representatives have met their burden,

the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; therefore, the court shall not consider the merits of the plaintiff's claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974); *Kirkpatrick*, 827 F.2d at 722; *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). However, this principle should not be invoked so rigidly so as to artificially limit a trial court's examination of the factors necessary to make a reasoned determination of whether Rule 23 has been satisfied. *Love v. Turlington*, 733 F.2d at 1564. Accordingly, a court may look beyond the pleadings in determining whether a motion for class action certification should be granted. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740, 752 (1982); *Kirkpatrick*, 827 F.2d at 722.

*In re Amerifirst Securities Litigation*, 139 F.R.D. at 427; *Tapken, et al. v. Brown, et al.*, Case No. 90–691–CIV–MARCUS, p. 25 (S.D.Fla.1991).

The courts have recognized that "class actions are a particularly appropriate means for resolving securities fraud ac-

tions". See *In re Amerifirst Securities Litigation*, 139 F.R.D. at 427; *Tapken, et al. v. Brown, et al.*, Case No. 90–691–CIV–MARCUS at 55–56; *See also Cohen, et al. v. Alan Bush Brokerage Co., et al.*, Case No. 85–8018–CIV–PAINE, p. 19 (S.D.Fla. 1990).

Moreover, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." [*Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d.1985) ], (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928 [89 S.Ct. 1194, 22 L.Ed.2d 459] (1969)). *See also Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir.1983) (suit involving fraudulent scheme against a large number of individuals is particularly appropriate for class action treatment)....

*In re Amerifirst Securities Litigation*, 139 F.R.D. at 427.

## PLAINTIFFS' MOTION FOR CLASS ACTION CERTIFICATION

The Plaintiff's motion to certify a class pertains only to Count I. Count II, a derivative cause of action, can only be maintained on behalf of CV Reit and is unaffected by class certification status. The Plaintiffs would exclude from the class the "Defendants, members of their immediate families, their legal representatives, heirs, successors or assigns, or any entity in which any Defendant has a controlling interest or over which any Defendant exercises control" (Complaint, para. 13).

In their motion, the Plaintiffs assert that they have met the four prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) that common questions of law and fact predominate as to all members of the class and that a class action is superior to alternative methods for a fair and efficient adjudication of the Defendants alleged fraud.

In the Discussion section below, this Court addresses the Plaintiffs' assertions and the Defendants arguments in opposition to certification of the class.

## DISCUSSION

### Rule 23(a) Prerequisites

#### (1) Numerosity

█ For a class action to be appropriate, the proposed class must be so numerous that joinder of all its members is impracticable. Rule 23(a)(1), Fed.R.Civ.P. There is no definite standard, however, as to how many members a class must have to satisfy Rule 23(a)(1). 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1762 (1986). What constitutes numerosity depends on the particular facts of each case. *Id.* Generally, the numerosity requirement is assumed to have been met in class action suits involving nationally traded securities. *In re Amerifirst Securities Litigation*, 139 F.R.D. at 427.

█ The Plaintiffs in this case allege that there are currently in excess of seven million shares of common stock outstanding and regularly traded on the New York Stock Exchange. The Plaintiffs estimate that the proposed class consists of approximately 500 persons geographically located throughout the United States. Based upon these allegations, this Court finds that the Plaintiffs have satisfied their burden of establishing that the class members are so numerous that joinder would be impracticable. For the record, the Defendants do not dispute that the proposed class satisfies the numerosity requirement.

#### (2) Commonality

█ In order to maintain a class action, there must be questions of law or fact common to the class. Rule 23(a)(2), Fed. R.Civ.P. The rule does not require, however, a complete identity of legal claims among class members. 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1763 (1986). The commonality requirement is satisfied where questions of law refer to standardized conduct by defendants toward members of the proposed class. *In re Amerifirst Securities Litigation*, 139 F.R.D. at 428, citing *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D.Ill. 1988). Factual differences concerning treatment or damages will not defeat a finding of commonality. *Id.; Tapken, et al. v. Brown, et al.*, Case No. 90–961–CIV–MARCUS at 58. Factual distinctions that may exist are "far less important than the common issues bearing on the existence of a 'common scheme' of misrepresentations and omissions". *Id.* at 59.

█ The gravamen of the Plaintiffs' complaint is that the Defendants engaged in a common course of conduct to conceal the true financial condition and business prospects of CV Reit, including the condition of the mortgage portfolio. To further this scheme, the Plaintiffs allege that the Defendants issued a series of false, misleading and materially omissive financial statements. As identified by the Plaintiffs, common questions of law and fact include: whether the Defendants participated in such a course of conduct; whether the public filings, releases and other communications were omissive and/or misrepresented material facts; whether the Defendants acted wilfully or with severe recklessness in omitting and/or misrepresenting material facts; and, whether the market price of CV Reit common stock was artificially inflated as a result of nondisclosure and/or misrepresentation.

Based upon the foregoing, this Court finds that the Plaintiffs have satisfied their burden of establishing that there are numerous issues, factual and legal, common to the proposed class. The Defendants do not dispute that the proposed class satisfies the commonality requirement.

#### (3) Typicality

█ The typicality prerequisite requires a finding by the court that the claims or defenses of the class representatives are typical of the claims or defenses of the class. Rule 23(a)(3), Fed.R.Civ.P. In other words, "a court must determine whether the class representatives' claims have the same essential characteristics as the claims of other members of the class". *In re Amerifirst Securities Litigation*, 139 F.R.D. at 428, citing *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985). Factual distinctions between the claims of the named class representatives and those

of other class members will not necessarily defeat a finding of typicality. *Id.* A strong similarity of legal issues will suffice despite substantial factual differences. *Id.* "Typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based on the same legal or remedial theory". *Tapken, et al. v. Brown, et al.,* Case No. 90–961–CIV–MARCUS at 60.

■ The Defendants raise two arguments as to why the Plaintiffs claims are atypical. This Court finds the Defendants' first argument to be inappropriate at this juncture because it goes to the merits of the case. This Court addresses it briefly for the benefit of the District Court. The Defendants argued in their memorandum in opposition to class certification that these Plaintiffs' claims were barred by the statute of limitations and thus not typical of the class. The Defendants contended, based upon Stan Charles deposition testimony, that the Charles' knew or should have known of the alleged omissions or misrepresentations by January, 1989. In that the Plaintiffs filed this lawsuit on April 26, 1991, the Defendants contended that the Charles' claims were barred by the statute of limitations under authority of *Lampf, Pleva, Lipkind, Prupis and Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which provided a one year statute of limitations.

The Plaintiffs argued in their own briefs that an assertion of a statute of limitations defense was inappropriate on a motion for class action certification. After the class certification motion was fully briefed, but prior to oral argument, the Plaintiffs filed a notice of supplemental authority as to the issue (DE 53). The authority which the Plaintiffs provided is the Federal Deposit Insurance Corporation Improvement Act of 1991 ("Improvement Act"), signed into law by President Bush on December 19, 1991. The Act amends the Exchange Act of 1934 and provides that any private civil action implied under Section 10(b) of the Exchange Act commenced on or before June 19, 1991 was subject to the limitation period provided for under applicable law existing as of June 19, 1991. Commenced prior to June 19, 1991, the applicable limitations period for this case is two years from the time the fraud was or should have been discovered, and in no event more than five years from the date of the purchase or sale. *Knight v. E.F. Hutton & Company, Inc.,* 750 F.Supp. 1109, 1112 (M.D.Fla.1990).

The Defendants did not emphasize the statute of limitations argument at the hearing before this Court. This Court finds the argument to be without merit, regardless of the enactment of the Improvement Act. *See Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir.1983); *Goldwater v. Alston & Bird,* 116 F.R.D. 342, 346 (S.D.Ill.1987), citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met"); *Gruber v. Price Waterhouse,* 117 F.R.D. 75, 78–79 (E.D.Pa.1987) ("the statute of limitations defense goes to the merits of the plaintiffs' complaint and therefore is beyond the scope of a motion for class certification").

■ This Court now turns to the second argument raised by the Defendants as to why the Plaintiffs' claims are atypical. The Defendants point to the fact that the Charles' final purchase of CV Reit common stock occurred in November, 1988. The proposed class period begins on October 1, 1988. The Defendants argue that the Plaintiffs purchased their shares before a great many of the alleged disclosures took place. They argue that, therefore, the Charles' claims are not typical of those class members who purchased later on in the class period.

The argument is similar to that raised by the defendants in *In re One Bancorp Securities Litigation,* 136 F.R.D. 526, 530 (D.Maine 1991). In that case, the defendants argued that the named plaintiffs, who made their purchases of stock toward the end of the class period, could not properly represent earlier purchasers. The

complaint alleged that the defendants made a series of misrepresentations with respect to The One Bancorp's financial condition over a one-and-a-half year period. The complaint further alleged that reserves for losses increased from $8 million to over $52 million during this period. The defendants countered that the progressive increases in levels of loan loss reserves corresponded to a steady decline in the market value of The One Bancorp stock. The defendants contended that the 70% stock price decline during the class period was attributable to The One Bancorp's gradual disclosure of greater loan loss reserves and consequent lower earnings. Therefore, the defendants argued, purchasers of shares early on in the class period were factually distinct and atypical of later purchasers. While the court admitted that the argument had "initial appeal", it dismissed its merits entirely.

> [T]he apparent factual divergence in the named [p]laintiffs claims does not render their claims atypical of claims of the class. Their claims are typical of the claims of the class because the complaint alleges that the Defendants engaged in a scheme or common course of conduct designed to deceive the investing public. *See Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975).

*In re One Bancorp Securities Litigation*, 136 F.R.D. at 531.

As stated earlier, the gravamen of the Plaintiff's complaint is that the Defendants engaged in a course of conduct to conceal the true condition of CV Reit's mortgage portfolio. The Plaintiffs allege that this course of conduct occurred during the entire class period, from October 1, 1988 to April 15, 1991. That both the named Plaintiffs' claims and proposed class members claims arise from this same alleged course of conduct overrides any factual divergencies which may exist. *See In re Amerifirst Securities Litigation*, 139 F.R.D. at 428–429. *See also In re Baldwin–United Corp Litigation*, 122 F.R.D. 424, 428 (S.D.N.Y.1986) ("As a general rule, a plaintiff's claim meets the typicality requirement if it arises from the same events or course of conduct that gives rise to the claims of other class members and if it is

based on evidence and legal theories consistent with the other members' claims"); *In Re: IGI Securities Litigation*, 122 F.R.D. 451, 456 (D.N.J.1988) ("It is the defendants' course of conduct, in this case the release to the press of the allegedly fraudulent and misleading statements, upon which the court must focus in determining typicality"); *In re: VMS Securities Litigation*, 136 F.R.D. 466, 475 (N.D.Ill.1991) ("A representative's claim is typical if it arises from the same event or course of conduct".). Based upon the foregoing, this Court finds that the Plaintiffs have satisfied the typicality requirement.

#### (4) Adequacy of Representation

■ The fourth prerequisite of Rule 23(a) requires that "the representative parties fairly and adequately protect the interests of the class". The purpose of this requirement is to protect the legal rights of absent class members. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d at 726. First, the representatives must not possess interests which are antagonistic to the interests of the class. *Id.* Second, the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation. *Id.*

■ To contest the Plaintiffs' adequacy of representation, the Defendants make two points. They argue that the Plaintiffs are not adequate class representatives because they have little incentive to prove the materiality of nondisclosures made subsequent to their own stock purchases in order to recover their own claims. They also suggest, in a footnote in their brief, that Stan Charles' age may have a bearing on his ability to represent the class.

Both arguments are without merit. This Court finds that the Plaintiffs have established they their interests are consistent with those of the absent class members. *See In re Baldwin–United Corp. Litigation*, 122 F.R.D. at 428 ("Unpersuasive is the argument ... that the Plaintiffs who purchased ... early in the class period have no incentive to prove facts relevant to a purported fraud committed on a subse-

quent purchaser".). The Plaintiffs have also retained highly qualified and experienced counsel to represent them. Accordingly, this Court finds that the Plaintiffs have met their burden of establishing that they will adequately represent the interests of the class.

Alternative Rule 23(b)(3) Requirements

■ Rule 23(b)(3) requires that common questions of law or fact predominate over individuals questions and that a class action is superior to other available means of adjudication.

In both their briefs and at oral argument, the Defendants vehemently argued that the Plaintiffs have not established that common questions of law or fact predominate over questions affecting only individual members of the class. The Defendants, quoting from *In re Amerifirst*, agree

> that where the court is confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, or even a common thread or scheme to which all alleged non-disclosures relates, 'courts have taken the common sense approach that the class is united by a common interest in determining whether the defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit'.

(DE 43, p. 14; *In re Amerifirst Securities Litigation*, 139 F.R.D. at 433, quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975)). The Defendants assert, however, that the court in *In re Amerifirst* went to the full limits of the law to reach its result. They contend that to certify a class in this case would require going beyond the limit set forth in *In re Amerifirst*. The Defendants argue that there are no common threads in this case and that the Plaintiffs have strained to categorize a fluctuating factual pattern into three broad categories of events so as to lend credence to the Plaintiffs' theory of a common course of conduct.

The Defendants further argue that the fact that the Plaintiffs rely upon the fraud-on-the market theory is not enough to establish a predominance of common issues. The Defendants contend that, while the fraud-on-the market theory may vitiate the need to determine reliance, there are a number of other issues which raise innumerable individual questions which must be determined as well, such as materiality, the statute of limitations defense and damages. At oral argument, the Defendants also provided this Court with a 6½ foot wide timeline chart which displayed and contrasted disclosures made with what the Plaintiffs alleged has occurred over the course of the proposed class period. (See Oral Argument Exhibit # 1).

Despite the position advanced by the Defendants, this Court finds to the contrary. The Defendants' arguments "miss the forest for the trees". The Defendants' portrayal of the case as a protracted series of disconnected events is creative but misleading. This Court finds that the Plaintiffs have established that common questions predominate in this case.

■ The Plaintiffs have advanced a fraud-on-the-market theory. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The Defendants themselves concede that this theory may vitiate the need to determine individual issues of reliance. *See e.g., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d at 722 (reliance element may be satisfied by proof that the plaintiff relied on the integrity of the market). Therefore, individual issues of reliance do not defeat class certification in this case. The other issues which the Defendants assert undermine the predominance of common questions need only be addressed briefly. First, as this Court noted above, the statute of limitations defense issue is inappropriate at this juncture. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. at 178, 94 S.Ct. at 2140. Second, the courts have held that individualized determinations of damages do not defeat class certification. *See In Re: Alexander Grant & Company Litigation*, 110 F.R.D. 528, 534 (S.D.Fla.1986). Third, an inquiry into the materiality of the various alleged misrepresentations and nondisclosures during the

class period would also be inappropriate at this juncture for it delves into the merits of the case. *See Dura–Bilt Corporation v. Chase Manhattan Corporation,* 89 F.R.D. 87, 94 (S.D.N.Y.1981).

The instant case is not outside the limits of *In re Amerifirst,* but rather, in line with its holding. In that case, the court stated:

> Plaintiffs assert that Defendants engaged in a common course of conduct to obtain substantial financial benefits for themselves by fraudulently overstating AmeriFirst's market value. They allegedly effectuated this fraud by implementing policies and practices in contravention of prudent and lawful procedures to enable them to build up AmeriFirst's loan portfolio, and then by taking further steps to conceal the problems which developed with the bank's loans as a result of the wrongful policies and procedures. Although the facts of this case as set forth in the complaint inevitably developed to a certain extent over the course of the class period as the alleged fraud progressed, there is no indication of any major fluctuation of events which would make materiality of a particular misstatement so different from other misrepresentations that proof of the claims would become unmanageable.

*In re Amerifirst Securities Litigation,* 139 F.R.D. at 433.

In this case, the alleged misrepresentations and omissions concerning various loans and financial transactions relate to the Defendants attempts to conceal the true condition and business prospects of CV Reit. The Plaintiffs and class of purchasers have allegedly been defrauded by the same common course of conduct. Accordingly, this Court finds that these common questions predominate over any otherwise individual ones.

This Court finds that a class action is the superior means in which to adjudicate these claims. *Eisenberg v. Gagnon,* 766 F.2d at 785.

## CONCLUSION

This Court finds that the Plaintiffs have met the four prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3). Accordingly, this Court recommends to the District Court that the Plaintiffs' proposed class action be certified.

## RECOMMENDATION

This Court has carefully reviewed the record in this matter, as well as applicable law, and being fully advised in the premises, this Court respectfully

RECOMMENDS to the District Court that the Plaintiffs' motion for class action certification be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties shall serve and file written objections, if any, with the Honorable Jose A. Gonzalez, United States District Court Judge, within ten (10) days from the date of this report and recommendation.

DONE AND SUBMITTED.