Anthony HERNANDEZ, David Burges, Donna Watson, Gwendolyn Smiley, Donna Grissom on behalf of themselves and all others similarly situated, and the Florida Transplant Coalition, Plaintiffs,

v.

Dr. Rhonda MEDOWS, in her official capacity as Secretary, Agency for Health Care Administration of the State Florida, Defendant.

No. 02–20964–CIV.

United States District Court,
S.D. Florida.

Aug. 26, 2002.

Anne Lisa Swerlick, Tallahassee, FL, William Henry Fraser, West Palm Beach, FL, Miriam E. Harmatz, Miami, FL, Jane Perkins, Chapel Hill, NC, Lourdes Rivera, Los Angeles, CA, for plaintiffs.

Christa Elizabeth Calamas, Grant Patrick Dearborn, L. William Porter, II, Tallahassee, FL, for defendant.

### ORDER ON MOTION FOR CLASS CERTIFICATION

GOLD, District Judge.

**THIS MATTER** is before the Court on Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(b)(2) [D.E. # 6]. Plaintiffs seek to certify a class defined as:

All current and future Florida Medicaid recipients who have, or will have their prescription drug coverage denied, delayed, terminated, or reduced without ade-

quate notice and the opportunity for a fair hearing.

Following class discovery and the submission of memoranda, oral argument on class certification was held on July 26, 2002. After considering the matter, the Court concludes that Plaintiffs' motion for class certification under Fed.R.Civ.P. 23(b)(2) should be granted in part in favor of the individual named Plaintiffs but denied as to the Florida Transplant Survivors Coalition. The Court's reasons and analysis are set forth below.

## A. CLASS CERTIFICATION STANDARD

The district court has broad discretion in determining whether to certify a class. *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir.1997). A class certification order, however, is not a final order and may be reviewed by the district judge "at any time" so that the district court may "redefine[ ] or more narrowly tailor[ ] classes or subclasses." *Shin v. Cobb County Board of Education,* 248 F.3d 1061, 1065 (11th Cir.2001).

To qualify as a class under Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs must initially satisfy the four thresholds requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class must exist (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy of representation). Plaintiffs seeking to represent the class bear the burden of establishing that all four requirements have been met. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718; 721 n. 2 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988); *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984) (A class action may only be certified "if the Court is satisfied, after a rigorous analysis, that the prerequisites of Fed.R.Civ.P. 23(a) are met"). These prerequisites are mandatory and the failure to es-

tablish any one is fatal to a motion for class action certification.

In addition to meeting the four preliminary requirements in subdivision (a), the plaintiffs also must satisfy one of the subsections of Fed.R.Civ.P. 23(b) in order to certify a class. In the instant case, the Lead Plaintiffs seek class certification under Rule 23(b)(2). Rule 23(b)(2) applies where the parties "opposing the class ha[ve] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) was intended "primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transport Co., Inc.,* 634 F.2d 989, 993 (5th Cir.1981) (citing Advisory Committee Notes, 39 F.R.D. 98, 102 (1966)).[1]

Moreover, prior to a determination regarding whether a class should be certified pursuant to Fed.R.Civ.P. 23, a district court "must determine that at least one named class representative has Article III standing to raise each class claim. 'Any analysis of class certification must begin with the issue of standing.'" *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279–80 (11th Cir.2000) (quoting *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987)).

## B. STANDING

### 1. Individual Standing

It is well-established that "prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class claim, '[a]ny analysis of class certification must begin with the issue of standing'" *Prado–Steiman,* 221 F.3d at 1279–80 (quoting *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987)). It is only " 'after the court determines the issues for which the named plaintiffs have standing [that] it

---

**1.** All Fifth Circuit decisions prior to October 1, 1981 are binding precedent on the Eleventh Circuit. *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

should address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.'" *Id.*

The burden is on the Plaintiffs to clearly "allege facts demonstrating that he is a proper party with standing to invoke judicial resolution of a dispute." *Anderson v. City of Alpharetta,* 770 F.2d 1575, 1582 (11th Cir. 1985). "It is not the role of the court to speculate concerning the existence of standing nor to piece together support for the plaintiff." *Id.*

The Court concludes that each named Plaintiff is a Florida Medicaid recipient whose prescription drug coverage is or will be denied, delayed, terminated, or reduced without notice and the opportunity for a fair hearing. As such, each named Plaintiff has standing to seek the subject declaratory action and injunctive relief. In seeking such relief, Plaintiffs are not challenging the Defendant's authority to implement drug utilization reviews. Nor are they challenging the four brand limit or the preferred drug list. Additionally, they are not challenging the Defendant's authority to deny coverage for a specific prescription drug that requires authorization if a request has not been appropriately filed and approved. Plaintiffs are only challenging the Defendant's purported failure to provide them with adequate and timely notice and fair hearing opportunities when Medicaid denies prescription drug coverage.

### 2. Associational Standing

■ An organization may have standing to sue on its own behalf if it satisfies that same standing test that applies to individuals. *ACORN v. Fowler,* 178 F.3d 350, 356 (5th Cir.1999) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). This standing standard, requires that the it has (1) suffered an injury in fact that is "concrete and particularized"; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also*

*Fowler,* 178 F.3d at 356 (injury in fact must be "fairly traceable" to the actions of the defendant and likely to be redressed by a favorable decision) (citing *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130)).

### 3. Representational Standing

■ An association may also sue "to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing." *Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir.1999). Specifically, under the test outlined by the Supreme Court in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977): an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests its seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

■ Here, the Plaintiff Florida Transplant Survivors Coalition is an unincorporated association whose members are either organ transplant recipients or their family members. The principle allegation is that many of these survivors are Medicaid recipients who have and will continue to have ongoing prescription drug needs. The Coalition's purpose is to monitor legislative, policy, and practice developments impacting the health needs of the transplant survivors; to advocate for legislation, policy, and practice that meets those needs; and to inform the transplant survivors and their families about that advocacy and involve them in it.

At this juncture, the Coalition has failed to establish a sufficient record to meet associational and representational standing requirements under the applicable case law. Accordingly, the Court concludes that the it lacks standing to seek class certification and be included as a named Plaintiff.

## C. ANALYSIS OF CLASS REQUIRE-MENTS

### 1. *Numerosity*

■ Rule 23(a)(1) requires that a Class shall not be so large that joinder would be impracticable. In order to establish numerosity for class certification, Plaintiffs need not present an exact number for the class. There is no fixed rule. Rather, what constitutes numerosity depends on the specific facts of each case. *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 696 (S.D.Fla.1992). The Court may consider geographic dispersion of class members and judicial economy in its determination. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986). While there is no definite standard as to the size of a given class, a plaintiff's estimate should be reasonable. *Id.* Generally, " 'less than twenty-one is inadequate, more than forty adequate.' " *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986) (quoting 3B Moore's Federal Practice § 23.05(1) n. 7. (1978)).

■ Although the Defendant has admitted numerosity (Def. Ans. ¶ 15), this Court independently concurs that this requirement has been met. Documents provided by the Defendant establish that plaintiff class numbers are in the thousands. Defendant's own statistics demonstrate that over 35,000 recipients in a single recent month were denied coverage of their prescription drugs or the opportunity for a hearing, including 21,974 recipients who received no drug at all in the same therapeutic class. These numbers exclude those recipients who were denied their prescription claims due to the generic substitution payment policy and those who eventually did receive their doctor's prescription after an unknown period of delay.

### 2. *Commonality*

■ Commonality requires that there is at least one issue affecting all or a significant number of proposed class members. *Stewart v. Winter,* 669 F.2d 328 (5th Cir.1982); *Kreuzfeld v. Carnehammar,* 138 F.R.D. 594, 599 (S.D.Fla.1991). The threshold for commonality is not high. *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). Moreover, factual differences between class members do not preclude a finding of commonality, as long as common questions of law exist. *CV Reit,* 144 F.R.D. at 696; *see also Walco Invests. Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla.1996) (not all of the questions of law or fact raised by the case have to be common to all the plaintiffs). Rather, the law requires only that the claims actually litigated in the lawsuit must be those fairly represented by the named plaintiffs. *Cox,* 784 F.2d at 1557 (citing Charles Alan Wright & Arthur R. Miller *Federal Practice & Procedure,* § 763 at 603); *see also Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.1978). Where a common scheme is alleged, common questions of law or fact will exist. *See Powers v. Stuart–James Co., Inc.,* 707 F.Supp. 499, 502 (M.D.Fla.1989); *Haitian Refugee Center, Inc. v. Nelson,* 694 F.Supp. 864, 877 (S.D.Fla. 1988).

The Court concludes that there are common questions of fact and law which satisfy the "commonality" requirement. The common questions of fact include: (a) whether the Defendant has failed to ensure that Plaintiffs receive adequate notice and the opportunity for a fair hearing when their prescription drugs coverage is denied, delayed, terminated, or reduced; and (b) whether the Defendant has failed to ensure Plaintiffs the opportunity to purse pretermination hearings when their prescription drug coverage is reduced or terminated. Common questions of law include: (a) whether the Defendant has violated the federal Medicaid Act and procedural due process under the Fourteenth Amendment to the United States Constitution by failing to ensure that Plaintiffs receive adequate notice and hearing rights when their prescription drug coverage is denied, delayed, terminated, or reduced; and (b) whether the Defendant has violated the federal Medicaid Act and procedural due process under the Fourteenth Amendment to the United States Constitution by failing to ensure Plaintiffs the opportunity to pursue pretermination hearings when their prescription drug coverage is reduced or terminated.

These common issues of fact and law arise by virtue of the Federal Medicaid Program under 42 U.S.C. § 1396, *et seq.*. The Federal

Medicaid Program is a cooperative federal/state program that provides health care services to specified categories of individuals meeting income and other criteria. Any state that chooses to participate in the Medicaid program is required to conform to federal law. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). The state is required to designate a single state agency to administer and supervise the state's Medicaid program. 42 U.S.C. § 1396a(a)(5). Florida participates in the Medicaid program. The Defendant is the Secretary of the Florida Agency for Health Care Administration, which is the single state agency responsible for the administration of all aspects of the Florida Medicaid program. §§ 409.901(14) & 409.902, Florida Statutes.

The federal Medicaid statute requires that states provide individuals with the opportunity for a fair hearing whenever their claims for medical assistance are denied or not acted upon with reasonable promptness. 42 U.S.C. § 1396a(a)(3). Without dispute, "medical assistance" includes benefits for prescribed drugs. 42 U.S.C. § 1396d(a)(12); § 409.906(19), Florida Statutes ("The agency may pay for medications that are prescribed for a recipient by a physician or other licensed practitioner of the healing arts authorized to prescribe medications and that are dispensed to the recipient by a licensed pharmacist or physician state and federal law.").

The regulations which implement the federal statutory requirement also define the Constitutionally required process that is due Medicaid recipients pursuant to *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See* 42 C.F.R. § 431.205(d). Under the regulations, recipients are entitled to receive timely and adequate written notice of their hearing rights when an "action" affects their claim for health services. 42 C.F.R. § 431.206(c)(2). The term "action" includes terminations, suspensions, and reductions of services, as well as denials and delays. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.200 and 42 C.F.R. § 431.201.

In the case of benefit terminations or reductions, federal Medicaid law requires that the state mail an advance notice of the action at least 10 days before it is to take effect. 42 C.F.R. § 431.211. Moreover, services must be continued until a final hearing decision if a Medicaid recipient requests a fair hearing before the date services are to be stopped or reduced, 42 C.F.R. § 431.231(c)(2). Services also must be continued until a final hearing decision if the requisite advance notice is not sent to a Medicaid recipient. 42 C.F.R. § 431.231(c)(1).

In this case, Plaintiffs seek declaratory and injunctive relief as a means of challenging the Defendant's failure to provide notice and fair hearing in accordance with federal law and the United States Constitution, when the prescriptions of Medicaid recipients are denied or rejected. With a minor exception, the failure to provide such notice and hearing is uniformly being applied against all members of the Plaintiff class. Thus, the common question of law here is whether, and the extent in which, Medicaid recipients Under Federal law, are entitled to notice and a fair hearing when their claims for prescription drugs have been denied, terminated, delayed or reduced. Typically, this happens when recipients receive prescriptions from their physicians and then go to a pharmacy to get the prescription filled, and are rejected by a state actor for any number of reasons under Florida's complicated Medicaid law. Such claims are decided immediately by the state actor and the pharmacist receives an electronic message stating whether the drug is covered and therefore whether the claim will be paid, suspended, or denied. There are currently 99 rejection codes used by the Defendant. *See* Fla.Admin.Code.R. 59 G–4.250, incorporating the *Florida Medicaid Prescribed Drug Services Coverage Limitations and Reimbursement Handbook.* When coverage is denied for whatever reason, there are no provisions for recipients to receive a written notice in either the Florida Statutes or in the current or proposed administrative rule on the prescription drug coverage. Fla.Admin.Code.R. 59 G–4.250. This fact is common to all. The underlying individual issues that caused each plaintiff to need prescription drugs through the Medicaid program and the differences in how they ultimately left the pharmacy empty handed are

not grounds for denying certification so long as there is at least one issue common to all class members, as there is here. The merits of the alleged wrong by the Defendant and the ultimate eligibility of individual plaintiffs for class certifications purposes are not relevant in determining if commonality is met.

Admittedly, class discovery has shown that subsequent to the denial, different factual scenarios occur: some recipients eventually receive the drug after a period of delay, and some receive a generic or other substitute; some recipients receive no medication within the same therapeutic class as the denied prescription. Notwithstanding, the common facts remain—that no notice or opportunity 'for hearing is provided in the overwhelming majority of circumstances.[2]

The Plaintiffs' claim to commonality finds support in *Haitian Refugee Center, Inc. v. Nelson,* 694 F.Supp. 864 (S.D.Fla.1988), where the court held that actions combining challenges to uniform practices with requests for declaratory, or injunctive relief, by their very nature deal with common questions of law and fact. *Id.* at 877. In response, the Defendant claims that the due process question cannot be a common legal issue because it is composed of not one, but many legal issues which are individual in nature, and which, therefore, requires a case-by-case analysis. Defendant argues that there are nineteen (19) separate legal questions related to due process and that the property interest of each class member depends on which of those nineteen issues applies. Essentially, Defendant argues that each denial requires an independent determination if property rights exist and whether state action is involved.

Plaintiffs concur with the Defendant that the state's prescription drug program is complicated, and that there are multiple cost control measures and numerous reasons for rejecting coverage. The Court, however, agrees with Plaintiff that the nineteen legal

issues and ten additional separate defenses simply miss the point and do not negate the overriding common issue of law and fact, namely, is the Defendant violating the Medicaid Act and regulations, and the Due Process Clause, by failing to ensure adequate notice and fair hearing rights on a uniform basis to all medicaid recipients who are denied prescription benefits? The ultimate decision on the merits will address whether property rights exist for due process purposes and whether state action is involved for all, **regardless** of the reason for the denial. Therefore, the Court concludes that the common questions of law on the issue of notice and fair hearing apply equally to all class members and that these common questions are sufficient to establish the propriety of a class.

### 3. *Typicality*

Under the third requirement of Rule 23(a), the named Plaintiffs must present claims or defenses that are typical of the claims of the class. Fed.R.Civ.P. 23(a)(2). Proof of typicality requires more than general conclusory allegations. *Walco Investments,* 168 F.R.D. at 326. The central inquiry in determining whether a proposed class has "typicality" is whether the "class representatives' claims have the same essential characteristics as the claims of the other members of the class." *In re Amerifirst Securities Litigation,* 139 F.R.D. 423, 428 (S.D.Fla.1991) (citing *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985)). A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and other class members, unless the factual position of the representative markedly differs from that of other members of the class. *Id.* "Any

---

**2.** Plaintiffs acknowledge that a public records request to the office responsible for the administration of Medicaid fair hearings reveals that since January 2000 there have been 43 requests for fair hearing due to prescription drug denials. At least some of these individuals received notice of the denial and their right to an appeal. Plain-

tiffs claim that these notices were neither adequate nor timely. Apparently, notice is given where one of the "protocol drugs" identified by the Defendant is involved and is being subject to misuse and abuse and the provider has filed a prior authorization request.

atypicality or conflict between the named Plaintiffs' claims and those of the Class 'must be clear and must be such that the interests of the class are placed in significant jeopardy.'" *Walco Investments,* 168 F.R.D. at 326 (quoting *Sley v. Jamaica Water & Utilities, Inc.,* 77 F.R.D. 391, 394–95 (E.D.Pa.1977)).

Here, the claims of the named plaintiffs are typical of the claims of proposed class members in that all have been denied their alleged right to adequate written notice and fair hearings when coverage of their prescription drugs is denied, delayed, terminated, or reduced; and/or denied their alleged opportunity for pre-termination hearing when coverage for their drugs are terminated or reduced.

As noted in the commonality section, the named Plaintiffs went to their pharmacist with a prescription from their doctor and were told that Medicaid would not pay for the drug. None of the plaintiffs were provided with a written explanation at the time explaining the reason(s) for the denial, their right to a fair hearing, or the circumstances under which they could continue receiving an ongoing drug therapy [for which plaintiffs claim they were entitled]. This commonality of factual experiences establish the required nexus between the named Plaintiffs' individual claims and those of the putative class members.

Likewise, the claims of the class representatives and other members of the class are identical. Class representatives, like the class members, are challenging Defendant's alleged violations of Medicaid law and the due process requirements of the Fourteenth Amendment. The named Plaintiffs argue, and the Court agrees, that both themselves and the members of the proposed class are purportedly entitled to the exact same type of relief-declaratory and injunctive relief-on the same legal theories. Accordingly, the incidental variations in Plaintiffs' factual situations do not defeat typicality because the basic nature of the injury and the legal theory of recovery is typical for the entire class.

The Defendant argue that multiple reasons for prescription drug denials and disparate factual situations between named Plaintiffs and the class defeat commonality, typicality

and the appropriateness of a Rule 23(b)(2) class. But, here, the differences in the factual background of each claim is unlikely to affect the outcome of the legal issues. The determination of whether to certify a class action rests not on whether the plaintiffs' claims "will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), quoting *Miller v. Mackey International,* 452 F.2d 424 (5th Cir.1971). As required by Rule 23, Plaintiffs have shown in at least a preliminary fashion the required commonality and typicality between named Plaintiffs' claims and the putative class, and have gone well beyond the pleadings in offering sufficient evidence and argument that they meet all the requirements for class certification.

Defendants' objections to class certification based on a lack of typicality are misplaced. *See Appleyard v. Wallace,* 754 F.2d 955 (11th Cir.1985). *See also Love v. Turlington,* 733 F.2d 1562 (11th Cir.1984); *Debra P. v. Turlington,* 644 F.2d 397 (5th Cir.1981); *Padron v. Feaver,* 180 F.R.D. 448 (S.D.Fla.1998). The facts in *Appleyard* are analogous to the present case in that all of the members of the Plaintiff's class were denied Medicaid after being medically evaluated pursuant to an allegedly illegal criteria. Although the district court in *Appleyard* declined to certify the class because it believed that the disparate medical conditions of each class member prevented a finding of typicality, the Court of Appeals for the Eleventh Circuit reversed, finding that the relief requested, i.e., a medical evaluation pursuant to appropriate criteria, was identical for all class members. Thus, in *Appleyard,* like the instant case, the court found the named plaintiffs' claims typical despite the fact that there were "vast factual differences surrounding the medical conditions of each," and that some might have been found ineligible under the requested criteria. *Id.* at 958.

This Court finds that in the instant case, the harm complained of is similar to that complained of in *Appleyard,* namely, that under color of law, the Defendant promulgated a policy, or adopted custom, and/or prac-

tice which uniformly denied members of the plaintiff class their respective rights under federal law and the U.S. Constitution. In the present case, the Defendant uniformly failed to provide notice and fair hearing to all Medicaid recipients purportedly in conformance with both federal law and the guarantees of the U.S. Constitution. In this case, as in *Appleyard,* whether the individual class members are granted or denied Medicaid prescription benefits at the end of the determination process is irrelevant to their claims, as the members of the Plaintiff class simply demand their statutorily guaranteed rights.

#### 4. *Adequacy*

■ The final requirement of Rule 23(a) provides that "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In determining whether named plaintiffs will sufficiently represent a potential class with vigor in accordance with the requirement of Rule 23(a)(4), the Court should consider (1) " 'whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and ... (2) whether plaintiffs have interests antagonistic to those of the rest of the class.' " *Kirkpatrick,* 827 F.2d at 726 (quoting *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir.1985)).

The Court concludes that class representatives share the interest of the putative class in bringing this action and obtaining the relief for alleged violations of Plaintiffs' rights. None of the named Plaintiffs interests can be said to conflict with the interests of other members of the proposed class.

The Court further concludes that the named Plaintiffs have taken prompt steps to challenge the Defendant's practices which they claim are unlawful, and they have obtained experienced counsel to represent the interests shared with other members of the class, including experience with Medicaid and civil rights class actions. The common interests of the proposed plaintiff class members will be fairly and adequately represented.

#### 5. *Rule 23(b)(2)*

■ In addition to meeting the four preliminary requirements in subdivision (a), the plaintiffs also must satisfy one of the subsections of Fed.R.Civ.P. 23(b) in order to certify a class. As previously noted, the Lead Plaintiffs seek class certification under Rule 23(b)(2). Rule 23(b)(2) applies where the parties "opposing the class ha[ve] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) was intended "primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson,* 634 F.2d at 993 (citing Advisory Committee Notes, 39 F.R.D. 98, 102 (1966)).

The central focus of this litigation is the Defendant's policy regarding notice and hearing for Medicaid recipients whose requests for prescription drug coverage are denied, delayed, terminated, or reduced. The Defendant's position is that class members allegedly have no property right in the prescription or there has been no state action in denying it. This purported policy is equally applicable to each class member of the proposed class. Injunctive or declaratory relief settling the legality of the policy with respect to the class as a whole is appropriate. The Court respectfully disagrees with Defendant that the multiple defenses claimed bar a Rule 23(b)(2) class action.

**WHEREFORE,** it is **ORDERED** that Plaintiffs' motion for class certification under Fed.R.Civ.P. 23(b)(2) is granted as to the individual named Plaintiffs and denied as to the Florida Transplant Survivors Coalition. A class is hereby certified for;

> All current and future Florida Medicaid recipients who have, or will have their prescription drug coverage denied, delayed, terminated or reduced without adequate Notice and the opportunity for a fair hearing.